CARAWAY, J.
|, The appellant in this case paid $1,000 to the arresting authority as bail for the defendant, who was charged for violation of a city ordinance. Defendant signed an “appearance bond” showing that cash had been deposited for her release on bail, but giving no indication that appellant was her surety. When defendant’s case proceeded to court, defendant reached an agreement with the prosecutor to forfeit the $1,000 in satisfaction of the fine and court costs. Appellant objected to the forfeiture when defendant’s case was before the trial court and again later by filing a motion to set aside the forfeiture under La. R.S. 15:85. The trial court denied the motion and the appeal followed. Finding that appellant presented no evidence of his status as a personal surety for the obligation of the bail undertaking, we affirm.

Facts

On September 11, 2004, Rebecca Miller was arrested for pending charges pertaining to an alleged attempted illegal entry onto the Horseshoe Casino riverboat using another person’s identification and knowing that she was underage. The charge was based upon a violation of a Bossier City ordinance.
In connection with the arrest, bail was fixed at $1,000. To meet that obligation, an “Appearance Bond” affidavit was prepared, and with blanks completed, it read as follows:
KNOW ALL MEN BY THESE PRESENTS:
That we, MILLER, REBECCA LYNN, as principal and CASH as security, are held and firmly bound unto the Mayor of Bossier City, State of Louisiana, and his successors in office, in the full penal sum of ONE THOUSAND DOLLARS, for the ^payment of which, well and truly to be made, we find ourselves, our heirs, administrators and assigns in solido.
THE CONDITIONS OF THE ABOVE OBLIGATIONS ARE SUCH THAT,
Whereas, a charge has been made against the above named MILLER, REBECCA LYNN by the City of Bossier City, State of Louisiana for the crime of FTA UNDER AGE ENTRY/CASINO on which charge the said MILLER, REBECCA LYNN has been arrested by Officer SANDERLAND.
Defendant being in actual custody mentioned herein and his release obtained under this bond, both he and the surety hereto waive the fixing of same by the Court of any irregularities or the proceedings under which it is allowed and given.
Now,, therefore, if the said MILLER, REBECCA LYNN shall well and truly make HER personal appearance at the City Court, from day to day, to answer the charge exhibited against HER as aforesaid, and not depart the Court *410 without leave first hand obtained, then and in that case this bond to be null and void; otherwise to remain in full force and virtue of law.
Taken and subscribed before me this 11 day of SEP, 2004.
The attestation place on the document is signed by an unidentified official, and there is no signature in the following blank which is labeled for signature by the city judge. The two name blanks for the parties’ execution were filled in as follows:
Name: Rebecca Miller
Street: 2205 Beckett St. C-3
City & State: Bossier City, LA 71111
Phone: (318) 797-3021
SURETY
Name:_
Street:_
City & State:_
Phone:_
Over the blanks for the surety’s name, address and phone number, the word “CASH” was written in large, bold print. As a result of Miller’s execution of this “Appearance Bond,” she was released from custody.
| ^Additionally, the record reveals two receipts issued by the Bossier City Police Department to appellant, Danny Ray Wimberly. The first was for $1,000, labeled “for cash bond.” The other was for $30 for the “bond fee.”
In November 2004, Miller appeared in court for appointment of counsel, and arraignment was set for April 5, 2005. The Bossier City Court minutes for April 5, 2005, state:
Judge Thomas A Wilson, Jr. presiding. Assistant city attorney, Truly McDaniel, requested the $1,000 cash bond be forfeited. Attorney Larry English, appeared on behalf of Danny R. Wimberly, who posted the cash bond for Ms. Miller. He informed the Court that his client objected to the forfeiture of the cash bond. Cash bond remained forfeited.
Although these minutes recite that the assistant city attorney requested bond forfeiture, there was no signed judgment forfeiting the $1,000 posted by Wimberly.
In April 2005, Wimberly filed a motion to set aside the judgment of bond forfeiture, in which he asserted that he personally spoke with Miller on April 5 in the corridor of the courthouse and was told by her that “he could leave because she had forfeited the bond.” Wimberly then entered the courtroom and learned that Miller had been advised by her court-appointed attorney, or someone else in an authoritative position, that she could choose not to appear in the courtroom, forfeit her cash bond and let the cash bond satisfy her fine and court costs. According to Wimberly, Miller elected, without his permission, to forfeit the bond and use the cash to pay her fine and court costs. Wimberly then persuaded attorney Larry English to note an objection on the record, but that despite Wimberly’s objection, the court Hallowed the bond forfeiture. Wimberly argued in his subsequent motion that he should have been afforded the opportunity to salvage his $1,000 by having Miller arrested for her non-appearance, rather than having his bond forfeited “without notice as required by LSA-RS 15:85.”
The hearing on the motion occurred on May 3, 2005. Wimberly testified that as a friend of the family, he was asked to post a bond for Miller. After several bondsmen refused to issue a bond, Wimberly himself posted the “cash bond” at the Bossier City jail and received a receipt for his $1,000. A copy of the receipt was entered into evidence at the hearing. Wimberly testified that the jailer told him “that I could come back to court and get my money *411 back when the ... when the case was concluded ... or whatever he said. Something to that effect.”
After taking the matter under advisement, the trial court rendered written reasons for its decision and denied Wimberly relief. This appeal followed.

Discussion

I.

After the lodging of this appeal, the City of Bossier City (“the City”) filed a motion to dismiss the appeal for lack of jurisdiction. The City asserted that under the provisions of La. R.S. 13:1896(B), appeals from city or municipal courts arising out of prosecutions under .city ordinances lie with the district court of the parish in which the court of original jurisdiction is located. The City further asserted that the jurisprudence has. consistently held that appeals from civil issues related to criminal prosecutions lie with |Rthe court having appellate jurisdiction of the criminal issue. In support of this proposition, the City cited State v. Kaercher, 380 So.2d 1365 (La.1980), and State v. Dunlevie, 503 So.2d 1004 (La.1987). The motion to dismiss was referred to the merits and will now be addressed.
Under the provisions of La. R.S. 13:1896(B), review or appeal of a judgment in any criminal case tried under a state statute in city, parish or municipal courts shall be as provided in Article 912.1 of the Louisiana Code of Criminal Procedure. On the other hand, since this case involves a city ordinance, review of a judgment in any other criminal case tried in a city, parish or municipal court shall be by appeal to the district court of the parish in which the court of original jurisdiction is located. Because Miller was not tried under a state statute, but was arrested under a Bossier City ordinance, review of a judgment in her criminal case would be by appeal to the 26th Judicial District Court, Parish of Bossier. However, the wording of the statute refers to a judgment in a criminal case, whereas a judgment of bond forfeiture is a civil judgment.
The City’s position at first glance is supported by the rationale of both Kaercher, supra-and Dunlevie, supra, in that they determined the appellate review of a proceeding on bond forfeiture to be the same as appeals from the underlying criminal proceeding. Nevertheless, these cases were decided before express legislative authority governing this type of civil proceeding. That changed in 1993 with Act 834 which amended the provisions of La. R.S. 15:85, concerning the procedure for forfeiture of bonds. Act 834 added provisions for appeals of judgments of bond | (forfeiture. Of particular importance are the provisions of La. R.S. 15:85(6)(c) which state:
(c) All appeals shall be to the appellate court having general civil appellate jurisdiction over the court issuing the judgment of bond forfeiture.
The Second Circuit Court of Appeal has general civil appellate jurisdiction over Bossier City Court. Accordingly, subsequent to the 1993 amendment, appeals of bond forfeiture judgments in Bossier City Court are to this court. It follows that Wimberly’s appeal of the judgment refusing to set aside the judgment of bond forfeiture falls within the jurisdiction of this court.

ii.

•In its brief, the City argues that there was insufficient evidence “that would place appellant in the category of: a surety.” It claims that the cash receipt alone, without Wimberly-being listed on the Appearance Bond as the surety, did not make Wimberly a surety in this case. We agree.
*412 Articles 311, et seq., of the Louisiana Code of Criminal Procedure, address the bail obligation and the security for performance of the bail undertaking. Bail is the security given by a person to assure his appearance before the proper court whenever required. La. C. Cr. P. art. 311. Article 312 lists the types or forms of bail, which are at issue herein — “bail through surety” and “bail through cash deposits.”
When a party posts an appearance bond for release of a defendant pending criminal proceedings, a suretyship agreement with the state is created. This agreement creates a civil contract based on an act under private signature, breach of which will lead to a money judgment against the |7 surety. State v. Shief 534 So.2d 513 (La.App. 5th Cir.1988). Generally, a surety underwriting a bond guarantees that a defendant will be present at each stage of the proceedings, that he will submit to the orders of the court, and that he will not leave the state without the permission of the court. State v. McCart, 627 So.2d 761, 763 (La.App. 2d Cir.1993).
Article 313 of the Code of Criminal Procedure provides that “surety” as utilized in the provisions on bail “is defined as a legal suretyship pursuant to the provisions of Civil Code Article 3035, et seq.’’ La.C.Cr.P. art. 313. Article 3038 of the Civil Code requires that “suretyship must be express and in writing.”
Significantly, a clear distinction is delineated in the Code of Criminal Procedure between (i) the personal surety, his unsecured or secured financial commitment, and his affidavit of suretyship (Articles 315, 317, 318 and 321), and (ii) the cash deposit of the defendant that secures his release on bail, “in lieu of a surety;” as addressed by Article 324. Article 324 does not speak in terms of cash deposits being made by sureties, while the articles pertaining to the personal surety contemplate that no money is deposited at all. As contemplated by the codal articles, only the financial commitment of the unsecured personal surety (Article 317) or a mortgage or security interest on immovable property (Article 318) is given by the personal surety, not a cash deposit. Also, the cash deposit allowance under Article 324 being limited to the defendant’s deposit, the defendant alone may direct the disposition of the deposit thereafter either by seeking its | ¡¡return upon acquittal or, as in this case, directing it to the payment of a fine or court costs.
Despite these two distinctive categories under the code — the personal surety and the cash deposit by the defendant— we acknowledge the possibility of a hybrid setting. A person may desire- to provide a defendant bail through suretyship, yet has no acceptable credit standing to qualify as an unsecured surety under Article 317 nor has any immovable property to secure the financial commitment. The person wants the protections afforded the personal surety so that if he renders a “surety’s performance” by insuring the defendant’s appearance at all stages of the proceedings, the bail amount is never owed to the state. The person - therefore offers a guarantee which amounts to a surety’s performance by depositing cash.
While the possibility of this hybrid factual setting is not barred by the code, its legal effects must be adjudicated under the codal requirements by placing it into one of the two categories. That category obviously must be “bail through surety.” Therefore, for the third person in this setting to gain protection, he must show himself to be acting as a surety with the agreement of the other party to the sure-tyship contact which is the state or city.
In this case, the “Appearance Bond,” which might have been drawn as a surety *413 contract between Wimberly and the City, does not name Wimberly nor bear a signature by him or an identified official of the City. There is no express and written sure-tyship contract. While Wimberly clearly acted to make the cash deposit for Miller’s benefit, his cause for the payment was primarily between the two of them. He did not request the 19status of surety and reach any agreement for such suretyship with the City. Without express and written recognition of suretyship, the City did not consent to a hybrid arrangement and did not need the security of the financial commitment of a surety for the defendant’s bail undertaking. The cash deposit was full security for the amount of bail and could be understood by the City as a “bail through cash deposit” authorized by Article 324 which is a bail arrangement solely between itself and the defendant.
Accordingly, without written evidence of suretyship, Wimberly has shown no standing as a surety or right of action[1] to make the present claims on the basis of the “bail through surety” status contemplated in the Code of Criminal Procedure. Likewise, the forfeiture procedures of La. R.S. 15:85 for the benefit of a surety provide Wimberly no right of action. The ruling of the trial court dismissing Wim-berly’s claim is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.

. La. C.C.P. art. 927B allows the court of appeal to dismiss a case on the peremptory exception of no right of action on the record. Sustainable Forests, L.L.C. v. Harrison, 37,152 (La.App.2d Cir.5/22/03), 846 So.2d 1283. The exception of no right of áction questions whether, the plaintiff in the particular case has a legal interest in the subject matter of the litigation.